## Olinde and Husband et al. *v.* M. Saizan, Administrator.

Where several attorneys in fact are employed, they are bound jointly for acts jointly done, and moneys jointly received. C. C. 2983.

If a subscribing witness to a paper when called on to prove his handwriting, deny it, experts may be appointed to establish it, by comparing the signature to the paper with the admitted signature of the witness. This is an exception to the general rule that a party cannot contradict his own witness.

APPEAL from the District Court of the Parish of Pointe Coupée, *Robertson,* J. *W. H. Cooley,* for plaintiffs. *Provosty,* for defendant and appellant.

Buchanan, J. This record offers a lamentable example of the manner in which a settlement of a small succession may be burdened with unnecessary costs. We have here, in a transcript of two hundred pages, the history of three suits, brought by the same heirs, against the same mandataries, to recover the share of the former in an inheritance of which the latter had the management; the two first of which suits were dismissed, and the third resulted in the payment of three hundred and sixty-five dollars, which is fully sustained by the evidence, and from which, nevertheless, both parties have appealed.

*Cesain Olinde* died in the parish of Pointe Coupée, in the year 1836, leaving a numerous progeny by two marriages. One of his daughters, *Manon* or *Marie,* died shortly after him, leaving four children, who were collectively entitled, by representation, to one-ninth part of their grandfather's succession. On the 27th April, 1841, *Hubert Olinde,* as natural tutor of those children, *Oelanie* and *Eugenie,* and *Baptiste Olinde,* one of the sons and co-heirs of the deceased *Cesain Olinde,* by notarial act before *Samuel Bush,* notary in Pointe Coupée, constituted and appointed *Jean Laurans* and *Laurent Chitz* their general and special attorneys in fact, for everything necessary for the settlement and liquidation of the estate of their ancestor. Four days afterwards, the same parties, joined by two other co-heirs of *Cesain Olinde,* his daughters, *Julie* and *Pélagie,* made another procuration, by authentic act before *Gustave Delaman,* notary in Pointe Coupée, for the same purposes, to the same attorneys in fact. The only difference between the two procurations is that in the last the mandataries were authorized to act either jointly or separately. Under these powers of attorney *Laurans* and *Chitz* acted in a partial partition of the estate of *Cesain Olinde,* which took place in August, 1841, and in making collections and payments on account of their principals through a series of years. In May, 1845, *Julie Olinde* revoked her mandate to *Laurans* and *Chitz* and constituted *Charles Poydras* her attorney in fact in relation to the inheritance of her grandfather. In the month of June following, *Poydras,* as attor-

ney in fact of *Julie Olinde*, settled with *Laurans*, whom he styles "un des liquidataires de la succession *Césain Olinde*," and gave him a receipt in full for "ce qui revient à la dite dame, d'après le réglement final de la dite succession."

In May, 1850, *Celanie* and *Eugenie* brought suit against the representatives of *Laurans* and *Chitz*, who were both dead, for their portion of their grandfather's estate, collected by them under the powers aforesaid, and stating the amount of the same at $2,157 57—which is the amount stated as their share in the partial partition of August, 1841. In March, 1851, this suit was dismissed on motion of plaintiff's counsel.

In September, 1851, another suit was brought by *Celanie* and *Julie* against the representatives of *Laurans* and *Chitz* for the same object as the former suit, stating the amount due plaintiffs at $1,464, after giving a credit for sums received on account, of $1,561. This suit was dismissed by judgment of court, in April, 1852, on some exception which we do not find in the record. It is to be observed that the counsel of plaintiffs in the second suit was Mr. *Mahoudeau*, who did not represent *Celanie Olinde* either in the first suit brought in 1850, nor in the present action, but who had an intimate acquaintance with all that has been done in the settlement of *Cesain Olinde's* succession, and who was a witness in the present case. Indeed it was upon his evidence that the District Judge has fixed the amount due to *Celanie*, in the judgment appealed from.

Finally, in September, 1852, *Celanie* and *Julia Olinde* instituted the present action through different counsel from those previously employed, claiming $3,500 as their share in their grandfather's succession, charged as having been jointly received by *Laurans* and *Chitz*, and without any credit given. A great deal of evidence has been taken, and the result was, as already stated, in June, 1854, a judgment in favor of *Celanie* against the succession of *Laurans* for $365 25. As to *Julia Olinde*, there was judgment of dismissal.

The only parties before this court are *Celanie Olinde*, wife of *Gebhart*, and *Auguste Provosty*, administrator of *Laurans ;* both of whom have appealed.

The judgment of the court below proceeds upon the ground that the attorneys in fact of the plaintiff are bound jointly for acts jointly done and moneys jointly received, under the powers of attorney in evidence. This is in accordance with Art. 2983 of the Code. There has been an attempt to show that *Chitz* was the sole agent of plaintiffs, but, as the Judge below correctly said, this attempt has failed. All sorts of evidence seem to have been offered and received on this point—declarations of *Laurans*—loose memoranda of *Chitz*—mutual receipts passed between them, impressions of witnesses, &c. This has been the subject of a bill of exceptions, which we would examine now minutely if the objectionable evidence had appeared to have exercised a prejudicial effect upon plaintiffs' case. But the Judge, in a very carefully prepared opinion, has separated the wheat from the chaff in the evidence, and has thus spared us a good deal of labor.

Another bill of exceptions relates to the admission of evidence to contradict a witness introduced by the party who sought to contradict him. We think, under the circumstances, the court did not err. A procuration under private signature (of *Julia Olinde* to *Charles Poydras*) signed with the ordinary mark of the constituent, was attested by those subscribing witnesses, two of whom were living, and in court at the trial. The first of those witnesses, *Martin*

*Major*, being called, swore that his name at the bottom of the paper as witness, was not written by him. The other subscribing witness was asked whether he did not see the first one sign his name to the paper, and answered affirmatively. He also proved his own handwriting, and the mark of the constituent. The party who had offered both those witnesses, then asked the court to appoint experts to compare the name of *Martin Major*, at the bottom of the procuration, with admitted signatures of the witness, for the purpose of contradicting him, which the court ordered. This is clearly an exception to the ordinary rule that a party cannot contradict his own witness. Being the subscribing witness of the paper, the party who wished to make use of the paper as evidence, was bound to produce him, if he could be had. But that very necessity is a reason for protecting him against the defective memory, or wilful prevarication of the witness. 1st Greenleaf's Evid. § 447.

It is needless for us to notice those points which have been made in argument, in relation to the interest of the plaintiff, *Julie Olinde*, as she has not appealed from the judgment dismissing her action.

Judgment affirmed; costs of both courts to be paid by the defendant, *Auguste Provosty*, administrator of the succession of *Jean Laurans*.